655 S.E.2d 199

**Charles E. CANTERBURY, Appellant**

v.

**William R. LAIRD, IV, Sheriff of Fayette County; J.E. Sizemore, Deputy Sheriff of Fayette County; Paul Blake, Fayette County Prosecutor; and The County Court of Fayette County, Appellees.**

No. 33132.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 23, 2007.

Decided Nov. 21, 2007.

Jacqueline A. Hallinan, Charleston, WV, for Appellant.

Scott E. Johnson, Michael D. Mullins, Steptoe & Johnson, Charleston, WV, for Appellees.

PER CURIAM:

Charles E. Canterbury, appellant (hereinafter "Mr. Canterbury"), appeals an order of the Circuit Court of Fayette County granting summary judgment in favor of the appellees, Sheriff William R. Laird, Deputy Sheriff J.E. Sizemore, former prosecutor Paul Blake,[1] and the Fayette County Commission.[2] Here, Mr. Canterbury contends that the circuit court committed error in granting summary judgment on his liability theories of false arrest and malicious prosecution. After a careful review of the briefs and record on appeal, and listening to the arguments of the parties, we affirm.

## I.

### FACTUAL AND PROCEDURAL HISTORY

In 2001, Mr. Canterbury operated a pawn shop in Fayette County. In June of 2001, the Fayette County Sheriff's Department developed a plan to use an informant to determine if Mr. Canterbury would violate W. Va.Code § 61–3–51.[3] Under this statute, dealers in gems and precious metals are required to report their purchase of such items within twenty-four hours to the local sheriff or municipal police. Pursuant to the sting operation, the informant sold Mr. Canterbury a gold wedding band. An investigation was conducted twenty-four hours after the sale. It was determined that Mr. Canterbury failed to report the purchase of the wedding band as required by W. Va.Code § 61–3–51. Subsequent to the investigation, an arrest warrant was issued against Mr. Canterbury for violating the statute. Following his arrest, Mr. Canterbury was processed, arraigned, and released on bond.

On September 12, 2001, a grand jury returned an indictment against Mr. Canterbury charging him with twenty-four felony counts of violating W. Va.Code § 61–3–51. Following a pretrial hearing, the circuit court certified a question to this Court seeking an answer as to whether the aforementioned statute applied to pawnbrokers and transactions where items of personal property were pawned. In certifying the question, the circuit court opined that the statute was *not* applicable to pawns. This Court refused to docket the certified question.

Subsequent to this Court's refusal to consider the certified question, the circuit court granted the State's motion to dismiss all

---

1. Mr. Blake is now a Fayette County circuit court judge.

2. Other defendants were named in Mr. Canterbury's complaint, but those defendants have been dismissed and are not part of this appeal.

3. It appears that this investigation was started because of a series of burglaries in the area.

counts of the indictment that dealt with pawns.[4] However, the State informed Mr. Canterbury that he would be re-indicted on other charges involving purchases, rather than pawns. On December 27, 2002, Mr. Canterbury filed a petition seeking a writ of prohibition with this Court. In his petition, Mr. Canterbury sought to have the State prohibited from re-indicting him. While the case was pending before this Court, Mr. Canterbury was re-indicted on two felony counts.

On June 23, 2003, this Court issued an opinion granting Mr. Canterbury the writ of prohibition. *See State ex rel. Canterbury v. Blake,* 213 W.Va. 656, 584 S.E.2d 512 (2003). In that opinion, this Court held that under the doctrine of desuetude, W. Va.Code § 61–3–51 could not be enforced against Mr. Canterbury. In fact, the statute had never been enforced since its enactment in 1981.

On August 16, 2004, Mr. Canterbury instituted the instant civil action against the appellees. The complaint alleged the following causes of action: (1) false arrest, (2) conspiracy, (3) malicious prosecution and/or retaliation, (4) selective prosecution, (5) failure to intercede, (6) supervisory and/or municipal liability, and (7) negligence. After a period of discovery, the appellees moved for summary judgment on all liability theories.[5] On December 30, 2005, the circuit court entered an order granting summary judgment in favor of the appellees on all liability theories. Mr. Canterbury filed a petition for appeal with this Court assigning error only to the dismissal of the false arrest and conspiracy liability theories. This Court granted the petition. Subsequently, Mr. Canterbury filed a brief seeking reversal of summary judgment on the false arrest and malicious prosecution liability theories.

## II.

## STANDARD OF REVIEW

■ Our cases have made clear that "[a] circuit court's entry of summary judgment is reviewed *de novo.*" Syl. pt. 1, *Painter v.*

*Peavy,* 192 W.Va. 189, 451 S.E.2d 755 (1994). Accordingly, this Court applies the same standard for granting summary judgment as would a circuit court. *United Bank Inc. v. Blosser,* 218 W.Va. 378, 383, 624 S.E.2d 815, 820 (2005). Pursuant to that standard, "[a] motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of the law." Syl. pt. 3, *Aetna Cas. & Sur. Co. v. Federal Ins. Co. of New York,* 148 W.Va. 160, 133 S.E.2d 770 (1963). Finally, we note that "[t]he circuit court's function at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but is to determine whether there is a genuine issue for trial." Syl. pt. 3, *Painter,* 192 W.Va. 189, 451 S.E.2d 755. Mindful of these principles, we address the issues raised on appeal.

## III.

## DISCUSSION

### A. *False Arrest Claim*

■ Mr. Canterbury's first assertion is that the circuit court committed error in granting summary judgment to the appellees on his false arrest claim. The circuit court disposed of this claim on several grounds.[6] However, we need only address one ground relied upon by the circuit court. That ground involved the statute of limitations.

The circuit court's order indicated that Mr. Canterbury's "claim of false arrest would have accrued on June 14, 2001, the day he was arrested, processed, arraigned, and released on bond." Further, the circuit court found that Mr. Canterbury did not file his complaint "until August 11, 2004, more than two years after the expiration of the applicable statute of limitations." Mr. Canterbury concedes that the one year statute of limitations found in W. Va.Code § 55–2–12(c) (2000) controls a claim for false arrest. How-

---

4. The remaining charges under the indictment were eventually dismissed.

5. Mr. Canterbury also filed a motion for summary judgment which was denied.

6. The appellees' brief sets out a basis for granting summary judgment that was not relied upon by the circuit court, nor does it appear to have been argued below.

ever, Mr. Canterbury contends that his false arrest claim should have been tolled until the conclusion of the two criminal actions brought against him. Thus, insofar as the order dismissing the second prosecution against Mr. Canterbury was filed on August 11, 2003, he contends that his complaint was timely filed within one year from that date.

This Court has previously noted in passing that "torts such as ... false arrest ... take the one-year statute of limitations set forth in West Virginia Code § 55–2–12(c)." *Wilt v. State Auto. Mut. Ins. Co.*, 203 W.Va. 165, 170, 506 S.E.2d 608, 613 (1998). *See Courtney v. Courtney*, 190 W.Va. 126, 132, 437 S.E.2d 436, 442 (1993) (" '[P]ersonal tort actions such as ... false arrest ... take the one-year statute of limitations[.]' ") (quoting, and overruling on other grounds *Rodgers v. Corporation of Harpers Ferry*, 179 W.Va. 637, 371 S.E.2d 358 (1988)); *Ricottilli v. Summersville Mem'l Hosp.*, 188 W.Va. 674, 677, 425 S.E.2d 629, 632 (1992) (same). This Court has never squarely addressed the issue of whether or not the statute of limitations for a false arrest claim is tolled until the conclusion of the criminal prosecution. Mr. Canterbury relies upon the dissenting opinion in *Wallace v. City of Chicago*, 440 F.3d 421 (7th Cir.2006) (Posner, J., dissenting), for the proposition that the statute of limitation for a false arrest claim should be tolled pending the final outcome of a criminal prosecution.

In *Wallace*, the plaintiff was arrested, without a warrant, in 1994 by the Chicago police for his role in a murder. The plaintiff was eventually tried and convicted. However, in 2002 the conviction was reversed, and the plaintiff was granted a new trial on the grounds that his arrest was unlawful and therefore it was error to admit his confession into evidence. The prosecutor subsequently decided not to retry the plaintiff. In 2003, the plaintiff filed an action in federal court against the City of Chicago and two police officers. The civil complaint alleged several causes of action, one of which was a claim for false arrest. The federal district court eventually granted summary judgment in favor of the defendants. The plaintiff appealed. However, the Seventh Circuit Court of Appeals affirmed. In doing so, the Seventh Circuit addressed the issue of whether or not the statute of limitations for the false arrest claim was tolled until the defendant's criminal conviction was reversed.

*Wallace* made clear that federal courts were divided on the issue of whether or not the statute of limitations is tolled on a claim for false arrest. *Wallace* stated that "the Second, Fourth, Fifth, Sixth, and Ninth Circuits have held that false arrest claims that would undermine the defendant's conviction cannot be brought until the conviction is nullified." *Wallace*, 440 F.3d at 428 (citations omitted). On the other hand, "[t]he First, Third, Eighth, Tenth, and Eleventh Circuits have held that false arrest claims accrue at the time of the arrest." *Wallace*, 440 F.3d at 428 (citations omitted). The Seventh Circuit decided to align itself with the appellate courts that did not allow the statute of limitations to be tolled on a false arrest claim:

Individuals and attorneys who wish to preserve a claim for false arrest or similar Fourth Amendment violations should file their civil rights action at the time of arrest. It will still be possible, of course, for a district court to stay any such action until the criminal proceedings are concluded, should it conclude in its discretion that a stay would be useful.

*Wallace*, 440 F.3d at 427. The dissenting opinion, on which Mr. Canterbury relies, disagreed with the majority opinion. The dissent argued that the better approach would be to allow the statute of limitations for a false arrest claim to be tolled when the claim's validity would cause a conviction to be overturned.

The opinion in *Wallace* was appealed to the United States Supreme Court. Subsequent to Mr. Canterbury filing his brief, the Supreme Court issued an opinion in *Wallace* affirming the decision of the Seventh Circuit. In doing so, the Supreme Court held:

We hold that the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained

pursuant to legal process. Since in the present case this occurred ... more than two years before the complaint was filed, the suit was out of time. The judgment of the Court of Appeals is affirmed.

*Wallace v. Kato,* —— U.S. ——, ——, 127 S.Ct. 1091, 1100, 166 L.Ed.2d 973, 986 (2007). *See Dailey v. Smiley,* 65 A.D.2d 915, 410 N.Y.S.2d 468, 469 (1978) ("The statute of limitations began to run on the false arrest ... claim ... on ... the date that plaintiff ... was arrested and released on bail.").

Assuming, for the sake of argument, that this Court adopted the position advocated by the dissenting appellate judge in *Wallace,* the dissent would not help Mr. Canterbury. A central requirement for tolling the statute of limitations on a claim for false arrest is that proof of the validity of the claim must undermine a conviction. For example, in *Wallace* the police obtained crucial evidence against the plaintiff, a confession, as a direct result of the illegal arrest. In that situation the validity of the claim for false arrest undermined

the conviction and resulted in the conviction being reversed.

■ In the instant case the record is clear. Proof of the validity of Mr. Canterbury's false arrest claim would have had no impact on a possible conviction in his criminal case.[7] Therefore, even if this Court adopted the tolling exception, the facts in Mr. Canterbury's case would not have triggered that exception. Consequently, we must affirm the circuit court's ruling finding the false arrest claim was not timely filed.[8]

### B. Malicious Prosecution Claim

■ The final issue raised by Mr. Canterbury concerns the circuit court's dismissal of his malicious prosecution claim. As we pointed out earlier, Mr. Canterbury did not make this an assignment of error in his petition for appeal to this Court.[9] The issue was first raised in his brief. The appellees correctly argue that the malicious prosecution claim is not properly before this Court.

---

7. The record in this case does not disclose that an unlawful confession was taken or that property seized without a warrant would be subject to suppression.

8. Mr. Canterbury also attempts to rely upon our decision in *Klettner v. State Farm Mutual Automobile Insurance Co.,* 205 W.Va. 587, 519 S.E.2d 870 (1999), wherein we held in Syllabus point 7 that:

> The one-year statute of limitations which applies to claims of unfair settlement practices brought pursuant to West Virginia Code § 33-11-4(9) (1996) does not begin to run until the appeal period has expired on the underlying cause of action upon which the statutory claim is predicated.

The decision in *Klettner* is distinguishable from the facts of Mr. Canterbury's case. *Klettner* addressed the issue of bringing an unfair settlement practices action against an insurer. The decision recognized that a valid claim for unfair settlement practices, brought while the underlying insurance claim was being litigated, was viable only to the extent that a plaintiff prevailed in the underlying action. Consequently, it was prudent for this Court to permit the statute of limitations to be tolled on an unfair settlement practices action until a final adjudication of the underlying cause of action. In the instant proceeding, the viability of a cause of action for false arrest is not dependent upon the outcome of a criminal proceeding. Indeed, it is generally recognized that "[t]he guilt or innocence of the person arrested is

irrelevant in a false arrest case, if the arrest is illegal or unjustified, and a subsequent acquittal or discharge is of no consequence in determining the validity of the arrest itself." 32 Am.Jur.2d False Imprisonment § 23 (2007). *See Fleming v. United Parcel Serv., Inc.,* 255 N.J.Super. 108, 604 A.2d 657, 681 (Law.Div.1992) ("First, an action for false arrest ... is not dependent on a favorable termination of a criminal proceeding. It is, rather, dependent on an absence of probable cause. Second, resolution of the criminal action, even by acquittal, would not provide proof of a lack of probable cause in a false arrest action.").

9. As we noted earlier, Mr. Canterbury's petition for appeal assigned error in granting summary judgment on his conspiracy liability theories. Insofar as Mr. Canterbury failed to raise or argue any issue in his brief pertaining to summary judgment on his conspiracy liability theories, we deem the matters to be waived. *See* Syl. pt. 6, *Addair v. Bryant,* 168 W.Va. 306, 284 S.E.2d 374 (1981) ("Assignments of error that are not argued in the briefs on appeal may be deemed by this Court to be waived."). *See also In re Edward B.,* 210 W.Va. 621, 625 n. 2, 558 S.E.2d 620, 624 n. 2 (2001) ("Because the errors, as assigned in the Appellant's petition for appeal, were neither assigned nor argued in the Appellant's brief, they are hereby waived."); *Tiernan v. Charleston Area Med. Ctr., Inc.,* 203 W.Va. 135, 140 n. 10, 506 S.E.2d 578, 583 n. 10 (1998) ("Issues not raised on appeal or merely mentioned in passing are deemed waived." (citation omitted)).

Simply put, it was not assigned as error in the petition for appeal.[10]

Rule 3(c) of the Rules of Appellate Procedure provides that a petition for appeal sets forth the "assignments of error relied upon on appeal[.]" Our cases have made clear that this Court ordinarily will not address an assignment of error that was not raised in a petition for appeal. *See Koerner v. West Virginia Dep't. of Military Affairs & Pub. Safety,* 217 W.Va. 231, 617 S.E.2d 778 (2005) (refusing to consider an argument in appellant's brief that was not assigned as error in petition for appeal); *Holmes v. Basham,* 130 W.Va. 743, 45 S.E.2d 252 (1947) (same). Consequently, we decline to consider the dismissal of Mr. Canterbury's malicious prosecution claim.

## IV.

## CONCLUSION

We affirm the circuit court's order granting summary judgment in favor of the appellees.

Affirmed.

**10.** In his brief, Mr. Canterbury contends that the circuit court disposed of both the false arrest and malicious prosecution claims on the basis of the statute of limitations. However, the summary judgment order did not dispose of the malicious prosecution claim on the ground that the statute of limitations had run. *See* Syl. pt. 2, in part, *Preiser v. MacQueen,* 177 W.Va. 273, 352 S.E.2d 22 (1985) ("An action for malicious prosecution must be brought within one year from the termination of the action alleged to have been maliciously prosecuted.").